**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FEDERAL HOME LOAN** | ) | **CASE NO. 1:05 CV 1455** |
| **MORTGAGE CORP.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| | ) | |
| **CYNTHIA G. LAMAR, et al.,** | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CYNTHIA G. LAMAR,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LERNER, SAMPSON &** | ) | |
| **ROTHFUSS, LPA, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Summary Judgment of Plaintiff, Federal

Home Loan Mortgage Company, against Defendant Cynthia G. Lamar (Docket #78); the Motion for

Partial Summary Judgement as to Counts I, II, and V filed by Cynthia Lamar against Third-Party

Plaintiff Lerner, Sampson & Rothfuss, LPA (Docket #66); the Motion for Partial Summary Judgment

as to Counts III and VIII filed by Cynthia Lamar against Third-Party Defendant Lerner, Sampson &

Rothfuss, L.P.A. (Docket #69); the Partial Motion for Summary Judgment filed by Third Party

Defendants Scott Harner and Cleveland Process Service, LLC, against Cynthia Lamar (Docket #64);

and the Motion for Summary Judgment of Lerner, Sampson & Rothfuss, LPA, against Cynthia Lamar

(Docket #s 72 and 80).[1]

## FACTUAL BACKGROUND

On May 23, 2003, Plaintiff, Federal Home Loan Mortgage Corporation ("FHLMC"), filed its

Complaint in Foreclosure against Defendant, Cynthia Lamar ("Ms. Lamar").  (Docket #1.)  FHLMC

alleges that Ms. Lamar is in default under the terms of a promissory note and mortgage and seeks the

sum of $118,195.25, together with interest at the rate of 6.875% per year, from February 1, 2005.

(Docket #1, Paragraph 9.)

On October 18, 2005, Ms. Lamar filed an Amended Answer, Counterclaim, and Third Party

Complaint.  (Docket #42.)  Counts I and II allege violations of the Fair Debt Collection Practices Act,

15 U.S.C. § 1692, et seq. ("FDCPA"), against Third-Party Defendant Lerner, Sampson & Rothfuss,

---

[1]

A separate Complaint in Foreclosure was filed by FHLMC against Ms. Lamar on May 23,
2005, United States District Court No. 1:05-CV-1454, assigned to Magistrate Judge William
H. Baughman, Jr.  That case involves a separate mortgage and promissory note relative to
property located at 5661 Adam Street, Maple Heights, Ohio.  Motions for Summary Judgment
are also pending in that case.

LPA ("LS&R").  Count III seeks to hold LS&R liable under the FDCPA for actions which she alleges constitute improper communications; harassment or abuse; false or misleading representations; and/or, unfair practices, as well as vicariously liable under the FDCPA for the actions of Third-Party Defendant Scott Harner ("Mr. Harner").  Count IV alleges a violation of the FDCPA by Mr. Harner.  Count V alleges a violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, by LS&R. Count VI is an assault claim against Mr. Harner.  Count VII is a claim for intentional infliction of emotional distress against LS&R and Mr. Harner.  Count VIII seeks to hold LS&R and Cleveland Process Service ("CPS") liable for the allegedly unlawful actions of Mr. Harner.  Count IX is a claim for civil conspiracy brought against FHLMC, LS&R, Mr. Harner, and CPS.

      **Complaint in Foreclosure**

In September of 1999, Ms. Lamar took title to the property commonly referred to as 7237 Raynham Drive in Oakwood Village, Ohio.  Docket #78, p. 3.  In October 2001, Ms. Lamar borrowed the sum of $122,600.00 from Wells Fargo Home Mortgage, Inc.; signed a promissory note guaranteeing repayment of that sum; and, granted a first mortgage lien on the property at issue to secure the promissory note.  *Id.*  The promissory note and mortgage were ultimately assigned to FHLMC.  *Id.*

After making payments under the promissory note for some time, Ms. Lamar eventually defaulted upon the note and mortgage.  *Id.*  On May 23, 2005, FHLMC filed a Complaint in Foreclosure against Ms. Lamar.  FHLMC asserts a default in the sum of $118,195.25, with interest thereon at the rate of 6.875% per annum from January 1, 2005, plus late charges, advances for taxes and insurance, and costs expended.  *Id.*

-3-

Ms. Lamar asserts that she had never heard of FHLMC prior to this lawsuit and believed that

Wells Fargo Home Mortgage, Inc. was the holder of the note and mortgage. Lamar Aff. at ¶¶ 5-8.

Ms. Lamar asserts that she is also confused as to the identity of the true holder of the note because she

received correspondence in the mail from another servicer, GE Mortgage Insurance. Id. at ¶¶ 8-10.

Ms. Lamar's answer to Plaintiff's Complaint in Foreclosure consists of a general denial, and several

affirmative defenses: (1) failure to state a claim; (2) lack of subject matter jurisdiction; (3) insufficiency

of process or service of process; (4) failure to join indispensable parties; (5) lack of standing; and, (6)

an assertion that FHLMC is not the real party in interest. In her brief in opposition to FHLMC's

Motion for Summary Judgment on the Complaint in Foreclosure, Ms. Lamar relies upon the assertion

that FHLMC has failed to demonstrate that it is the real party in interest, thereby precluding summary

judgment.

Ms. Lamar also claims that FHLMC has engaged in a civil conspiracy against her in concert

with the other Defendants.

**Service of Summons and Complaint; Involvement of Mr. Harner and/or CPS**

On June 15, 2005, Ms. Lamar signed for and received a certified mail envelope from the Clerk

of Courts, including the Summons and Complaint in Foreclosure. Lamar Aff. ¶2; DeBlasis Aff. ¶15.

The service of the Summons and Complaint was the first communication she received from LS&R.

The first page of the summons states as follows:

> YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S
> ATTORNEY, . . . an answer to the complaint which is herewith served upon you,
> within twenty (20) days after service of this summons upon you, exclusive of the day of
> service. If you fail to do so, judgment by default will be taken against you for the relief
> demanded in the complaint. You must also file your answer with the Clerk of this Court

-4-

within a reasonable period of time after service.

Attached to the Summons is FHLMC's Complaint in Foreclosure, which states, beginning on the first page in regular type, as follows:

The Summons attached to this Complaint advises you of certain of your rights under state law for responding to this Complaint.  Among these rights is your right to serve your Answer upon Lerner, Sampson & Rothfuss within twenty (20) days.  If your name appears in numbered paragraph 1 below, you have additional rights under federal law to request certain information from Lerner, Sampson & Rothfuss within thirty (30) days.  These time periods run at the same time and start on the day after you receive this Complaint.

The federal Fair Debt Collection Practices Act requires that Lerner, Sampson & Rothfuss provide you with the following information.  The amount of the debt, as of May 20, 2005, is $121,289.78.  This amount is made up of your principal balance, interest, late charges, and amounts expended by the creditor, such as for taxes and insurance.  Because many of these items vary from day to day, the amount due on the day you pay will be greater.  Hence, if you pay the amount shown above, an adjustment will be necessary after we receive your check.

The creditor to who the debt is owed is the plaintiff listed above.  Unless, within thirty (30) days of your receipt of this Notice, you notify Lerner, Sampson & Rothfuss that you dispute the validity of this debt or any portion of it, Lerner, Sampson & Rothfuss will assume the debt is valid.  Lerner, Sampson & Rothfuss is a debt collector.  This is an attempt to collect a debt, and any information obtained will be used for that purpose.

If you notify Lerner, Sampson & Rothfuss in writing within thirty (30) days of the receipt of this Notice that the debt or any portion thereof is disputed, Lerner, Sampson & Rothfuss will obtain a verification of the debt and will mail a copy of that verification to you.  If the creditor names as plaintiff above is not the original creditor, and if you make written request to Lerner, Sampson & Rothfuss within thirty (30) days from the receipt of this notice, Lerner, Sampson & Rothfuss will provide you with the name and address of the original creditor.

On June 16, 2005, a certified mail return establishing service upon Ms. Lamar was filed with the Court and an electronic notice was sent to Counsel for FHLMC.  DeBlasis Aff. ¶16, Ex. B.  Two

-5-

days prior, on June 14, 2005, LS&R had hired Scott Harner and/or Cleveland Process Service to serve Ms. Lamar with a copy of the Complaint and Summons.  DeBlasis Aff. ¶13.  Lamar was personally served with a second copy of the Summons and Complaint on June 23, 2005 by Harner.  DeBlasis Aff. ¶17; Harner Depo. at pp. 8-9.

The events surrounding the personal service of the Summons and Complaint on Ms. Lamar by Mr. Harner form the basis for Ms. Lamar's assault, intentional infliction of emotional distress, and civil conspiracy claims.  As alleged by Ms. Lamar, Mr. Harner attempted to serve her with the Summons and Complaint at her place of employment unsuccessfully.  Ms. Lamar asserts that she did not know that Mr. Harner was a process server or that Mr. Harner was attempting to serve her with legal process with respect to a foreclosure complaint.  Lamar Aff. ¶9.  Ms. Lamar alleges that Mr. Harner followed her in his car as she left the parking lot after work; attempted to approach her vehicle while she was stopped in traffic; drove erratically and at a high rate of speed so as to catch up to her; and, finally followed her into the Maple Heights, Ohio police station parking lot and "pulled back and damaged [Ms. Lamar's] driver's side windshield wiper, [and] forcefully jamm[ed] the loose papers and documents on her windshield."  Lamar Aff. at ¶¶9-17; Docket #66 at p. 7.  Ms. Lamar reported the incident to the Warrensville Heights Police Department, as that is where the alleged chase began.  Lamar Aff. ¶18, Ex. B.  Ms. Lamar raises claims against Mr. Harner and/or Cleveland Process Service for assault; intentional infliction of emotional distress; and, civil conspiracy, as well as a claim for violations of the FDCPA.

### Statutory Notice and Summons and Complaint

LS&R is a debt collector as that term is defined by the FDCPA.  DeBlasis Aff. ¶3.  Ms.

Lamar claims that the notice provided by LS&R, as part of the Summons and Complaint, violates the FDCPA because it does not "effectively convey" certain information required under the FDCPA, 15 U.S.C. § 1692g.  Specifically, a debt collector is required to send to the consumer a written notice containing certain specified information, including a statement that unless the consumer disputes the validity of the debt within thirty (30) days of receipt of the notice, the debt collector will assume the debt to be valid, as well as a statement that if the consumer does dispute the validity of the debt within thirty (30) days, the debt collector will obtain verification of the debt.

Ms. Lamar claims that: (1) LS&R violated the notice provisions of the FDCPA, 15 U.S.C. § 1692g, by attaching the letter containing the statutorily required notice to the Summons and Complaint; (2) that the statutorily required notice is overshadowed and/or contradicted by the remaining text of the letter attached to the Summons and Complaint because the statutorily required notice is in the same font and is not distinguishable from the remainder of the letter; and, (3) that LS&R, by allegedly engaging in the conduct that serves as the basis for Ms. Lamar's Third-Party and Complaint and Counterclaim, violated one or more of the provisions of the FDCPA including:  15 U.S.C. § 1692c (improper communications with the consumer), § 1692d (harassment or abuse), § 1692e (false or misleading representations), § 1692f (unfair practices).  Ms. Lamar also claims that LS&R should be held vicariously liable for the alleged actions of Mr. Harner/CPS in serving process.  In addition, Ms. Lamar alleges that LS&R is liable under the OCSPA based on what she believes are violations of the FDCPA.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.

CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving

party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material"

only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the

applicable evidentiary standards.  The court will view the summary judgment motion in the light most

favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not

establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th

Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)

(citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and

not "significantly probative," the court may decide the legal issue and grant summary judgment.

*Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving

party.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that

results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53

F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing that there is a genuine issue
> for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an

automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary

judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth

Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in

ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir.

1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R.

CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on
> the basis of personal knowledge, set forth admissible evidence, and show that the
> affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or
> certified copies to all documents referred to in the affidavit.  Furthermore, hearsay
> evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be

considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials
> submitted by the other party in support of its position on summary judgment, any
> objections to the district court's consideration of such materials are deemed to have

been waived, and [the Sixth Circuit] will review such objections only to avoid a gross
miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to

examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."

*Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material

evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine

whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether

there is the need for a trial--whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson*, 477 U.S. at 250.

## DISCUSSION

## I.     FHLMC's Complaint in Foreclosure Against Ms. Lamar

As an initial matter, this Court agrees that Ms. Lamar has presented insufficient evidence to

defeat FHLMC's Complaint in Foreclosure on the basis of failure to state a claim; lack of subject

matter jurisdiction; insufficiency of process or service of process; failure to join indispensable parties;

and/or, lack of standing.  Further, as set forth in its Affidavit Supporting its Sur-Reply in Support of

Summary Judgment, FHLMC is the owner of Ms. Lamar's loan, since its purchase of the loan from

Wells Fargo on November 14, 2001.  FHLMC contracted with Wells Fargo to service the loan, which

required Wells Fargo Bank, N.A., to act as the mortgagee of record, including such duties as collecting payments on the loan from Ms. Lamar.

Ms. Lamar argues that the Funding Detail Report submitted by FHLMC constitutes inadmissible hearsay, not properly authenticated as a business record under Fed. R. Evid. 803(6), and, therefore, it cannot serve to establish FHLMC as the owner of the loan.  Fed. R. Evid. 803(6) addresses the admissibility of business records an exception to the general hearsay rule.  Fed. R. Evid. 803(6) states, in pertinent part, as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . .

Ms. Lamar has not argued that she did not default on the loan, nor has she presented evidence that another entity owns the loan, but argues that she doesn't know if FHLMC is the true owner of the loan.  FHLMC has, however, provided a sworn affidavit, establishing that although Wells Fargo Bank, N.A. serviced the loan, FHLMC owns the loan.  The sworn affidavit of Frederick J. Lyne, Director of Business Operations in the Operations and Technology Division for FHLMC, states that he is responsible for loan purchase operations.  Docket #111, at Exhibit 2, Paragraph 1.  Mr. Lyne manages mortgage lenders' delivery of loans to FHLMC; certifies promissory notes with respect to those loans; and, manages payment to the lenders for the loans purchased.  *Id.* at Paragraph 4.  Mr. Lyne has access to and custody of FHLMC's business records.  Mr. Lyne's affidavit states that the loan at issue was made by Wells Fargo Home Mortgage, Inc. to Ms. Lamar on October 29, 2001, and the loan was secured by a mortgage upon 7237 Raynham Drive, Oakwood Village, Ohio 44146; FHLMC

-11-

purchased the loan from Wells Fargo on November 14, 2002, and is the current owner of the loan;

FHLMC contracted with Wells Fargo to service the loan; and, servicing the loan required Wells Fargo

to act a mortgagee of record, including collection of payments. *Id.* at Paragraphs 5-10.  Attached to

the Affidavit of Mr. Lyne is a Funding Detail Report, identifying the loan in question as being purchased

by FHLMC from Wells Fargo. *Id*. at p. 5.

The statements in the affidavit refer to business records which are not hearsay; the records are

kept in the course of regularly conducted business activity; and, Mr. Lyne has personal knowledge of

the loan at issue based upon his position with FHLMC.  Ms. Lamar has provided no evidence to this

Court that the explanation for the chain of ownership set forth by FHLMC is incorrect or somehow

fabricated.  The evidence presented to this Court shows that FHLMC owns the loan and that Ms.

Lamar defaulted on the loan.

Based on the foregoing, this Court finds there to be no genuine issue as to any material fact and

there is no sufficient evidence by which a jury would find in favor of Ms. Lamar.  Accordingly,

FHLMC is entitled to Summary Judgment on its Complaint in Foreclosure against Ms. Lamar.

FHLMC is hereby ordered to comply with all provisions of General Order 2006-16 regarding

foreclosure actions in this Court.

**II.      Ms. Lamar's Counterclaim and Third-Party Complaint.**

As set forth above, in her Third-Party Complaint and Counterclaim, Ms. Lamar raises

claims against FHLMC, LS&R, Scott Harner, and Cleveland Process Service.

**A.      Counts I and II.**

Ms. Lamar alleges that LS&R, a debt collector, violated the notice provisions of the FDCPA

by incorporating the required statutory notice with the Complaint and Summons.  First, Ms. Lamar

argues that the inconsistency between the 20-day time period to respond to the Complaint and the 30-

day time period within which to dispute the validity of the debt were confusing.  Second, Ms. Lamar

points to the fact that the language of the Complaint states that if Ms. Lamar's name is contained in

Paragraph 1 of the Complaint, she may have certain rights arising under Federal Law.  Paragraph 1

only discusses jurisdiction and Ms. Lamar's name does not appear until Paragraph 4 of the Complaint.

Third, Ms. Lamar explains that she received notice of the lawsuit on two separate days, once by

certified mail and thereafter by personal service, thereby making the time-period for response unclear.

Finally, Ms. Lamar argues that the statutory notice set forth in the same document as the Complaint is

overshadowed or contradicted by the text of the letter attached to the Summons and Complaint.[2]

> Assuming, for the purposes of this case, that the Summons and Complaint constitute an "initial

communication" under the FDCPA, the clarity of information contained therein is to be judged using the

_____

[2]

Ms. Lamar argues at length that the opinion of the Southern District of Ohio in *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 2005 U.S. Dist. LEXIS 11127 (S.D. Ohio, June 9, 2005) precludes LS&R from asserting that its FDCPA notice and the attached Summons and Complaint do not violate the FDCPA.  In *Kafele*, LS&R moved for summary judgment against itself, stating that for purposes of their own summary judgment motion, they did not contest the assertion that their FDCPA notice was inadequate.  According to LS&R, this was done in an effort to limit the litigation of a case with very little at stake as far as damages.  This Court does not believe, as Ms. Lamar suggests, that the actions by LS&R in the *Kafele* case amount to a blanket admission that all of its FDCPA notices are in violation of the law.  Further, Ms. Lamar states that "the basic content of the required notices used in both the instant matter and in the *Kafele* case are identical, **with the exception of their form and placement.**"  (Emphasis added.)  (LS&R explains that it changed its method of including notice subsequent to the *Kafele* case.)  It appears that in this case, Ms. Lamar is in fact objecting to the form and placement of the FDCPA notice.  Based on the foregoing, this Court does not find the proceedings or decision in *Kafele* to have any bearing on its decision in this case.

-13-

"least sophisticated consumer" standard.  *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992).

The least sophisticated consumer, with a careful reading of the language in the Summons and Complaint, including the statutorily required notice, would understand that there were two different time periods within which she must act, and that the time periods run at the same time, from the day after the Summons and Complaint is received.  Ms. Lamar also argues that because she was served on two separate days, her rights were not clear.  However, it is reasonable to assume that the "least sophisticated consumer," reading and understanding the first notice sent, would find it important to respond within the time constraints arising after receipt of the documents for the first time, or at the very least inquire as to the deadline for response.  There is no argument that Ms. Lamar did not read the first Summons and Complaint when it was received.

Further, the reference regarding "Paragraph 1" is not fatal.  The explanation of Ms. Lamar's rights is set forth in detail after the reference to "Paragraph 1" and a reading of the explanation does not give the impression that her rights or responsibilities under Federal law are dependent upon a reference to her name in "Paragraph 1."   Finally, there is nothing so complex in the Summons and Complaint, or the way that it is formatted or presented, that would be misunderstood by the "least sophisticated consumer."  The information is not "reasonably susceptible" to a contradictory meaning.

Finally, as noted by LS&R, the FDCPA provides an exception for bona fide errors, stating: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonable adapted to avoid any such error."

-14-

15 U.S.C. § 1692k(c).  In this case, such an exception is appropriate.  LS&R discusses in detail the measures it has taken in order to comply with the FDCPA.  The format was aimed at satisfying not only its statutory obligations, but also its obligations to the client.

Both the 20-day time period within which to respond to the Complaint, and the 30-day time period within which to dispute the validity of the debt, apply to Ms. Lamar's situation.  These time periods were not created or established by LS&R.  However, LS&R as a debt collector instituting a foreclosure action, was required to communicate both to Ms. Lamar.  While the two time periods are different, they apply to different responsibilities and therefore do not contradict one another.  Just as the language drafted by LS&R reads, the two time periods run at the same time.  Further, as stated above, there is no evidence that the reference to Ms. Lamar's name appearing in "Paragraph 1" was intentional, and Ms. Lamar's rights are set forth in detail following this clerical error.  In short, a careful reading of the Notice, Summons and Complaint conveys the required information and there is nothing that would confuse even the least sophisticated consumer.

Based on the foregoing, Ms. Lamar's third-party claims against LS&R under the FDCPA, Counts I and II of her Third-Party Complaint cannot withstand summary judgment.  Accordingly, LS&R's Motion for Summary Judgment as to Counts I and II (Docket #72) should be GRANTED, as there is no genuine issue as to any material fact and LS&R is entitled to summary judgment as a matter of law.  Ms. Lamar's Motion for Summary Judgment as to Counts I and II (Docket #66) is hereby DENIED.

**B.      Counts III and IV.**

Count IV of Ms. Lamar's Third-Party Complaint alleges that the actions of Scott Harner, in

serving process upon her, violated the FDCPA, as an improper communication under 15 U.S.C. §

1692c and/or harassment or abuse under 15 U.S.C. § 1692d.  In Count III of her Third-Party

Complaint, Ms. Lamar seeks to hold LS&R liable under the FDCPA for actions which she alleges

constitute improper communications with the consumer; harassment or abuse; false or misleading

representations; and/or, unfair practices, and also for the actions of Mr. Harner that she alleges violated

the FDCPA, under a theory of vicarious liability.

  Mr. Harner, and Cleveland Process Service, are not "debt collectors" under the FDCPA.  15

U.S.C. § 1692a(6)(D) specifically excludes "any person while serving or attempting to serve legal

process on any other person in connection with the judicial enforcement of any debt."  Therefore,

neither Mr. Harner, nor Cleveland Process Service, can be liable under the FDCPA for Mr. Harner's

alleged actions while serving the Summons and Complaint on Ms. Lamar.  Further, Ms. Lamar's third-

party claim against LS&R for vicarious liability under the FDCPA cannot stand.[3]

---

[3]

Ms. Lamar relies upon a decision of the United States District Court for the Eastern District
of Pennsylvania in *Flamm v. Sarner & Associates, P.C.*, 2002 U.S. Dist. LEXIS 22255
(Nov. 6, 2002), in arguing that Mr. Harner and/or CPS should not be exempted from the
definition of "debt collector" under the FDCPA.  The *Flamm* decision is not controlling on this
Court.  Further, the facts and circumstances are different than those in this case.  In *Flamm*, the
process server specifically referenced Ms. Flamm's debts in his efforts to serve her.  The Court
reasoned that "a person who goes beyond merely a messenger in serving legal process and
engages in prohibited abusive or harassing activities to force an individual to repay a debt is no
longer exempt under the legal process server exception."  In this case, the allegations do not
raise a question that Mr. Harner's alleged abusive or harassing activities were aimed at forcing
Ms. Lamar to repay her debt.  The evidence before this Court only supports a finding that Mr.
Harner and/or CPS were process servers.  Therefore, pursuant to the express language of the
FDCPA, they are excluded from the definition of debt collector.

Even if Mr. Harner, and Cleveland Process Service, were included in the definition of debt collectors, which this Court has expressly determined they are not, Mr. Harner and/or CPS worked as independent contractors. LS&R hired Cleveland Process Service and/or Mr. Harner to obtain personal service on Ms. Lamar.  Mr. Harner is the sole employee and owner of Cleveland Process Service, an Ohio limited liability company.  LS&R had no control over the hiring of Mr. Harner by Cleveland Process Service, and had no control, nor did it control, the means by which Mr. Harner completed service.  "The chief test in determining whether one is an employee or an independent contractor is the right [of the principal] to control the manner or means of performing the work." *Pusey v. Bator*, 94 Ohio St. 3d 275, 278-79 (2002).  Accordingly, LS&R cannot be vicariously liable for the alleged unlawful activities of Mr. Harner.

Finally, this Court finds no evidentiary basis for Ms. Lamar's claims that LS&R violated any of the various provisions of the FDCPA cited in Count III of her Complaint.  LS&R instituted a civil lawsuit to collect a debt owed by Ms. Lamar to FHLMC.  LS&R hired an independent process server to serve the Summons and Complaint.  There is simply no evidence to support Ms. Lamar's alleged claims of wrongdoing by LS&R.  LS&R did not use any false representation or deceptive means in drafting the Summons and Complaint, nor did it engage in any harassing or malicious behavior in connection with the filing and service of this lawsuit.  A plain reading of the Summons and Complaint reveal no blistering harsh or ominous language, nor is the terminology vague or uncertain.  The Court finds no evidence of improper communications between LS&R and Ms. Lamar.  Accordingly, this claim cannot withstand summary judgment.

As there is no genuine issue as to any material fact, Scott Harner and LS&R are entitled to summary judgment as to Counts III and IV of Ms. Lamar's Third-Party Complaint.  The Motion for Summary Judgment filed by Scott Harner and Cleveland Process Service as to Count IV (Docket #64) is hereby GRANTED.  LS&R's Motion for Summary Judgment as to Count III (Docket #72) is hereby GRANTED and Ms. Lamar's Motion for Summary Judgment as to Count III (Docket #69) is hereby DENIED.

### C.      Count V.

In Count V of her Third-Party Complaint, Ms. Lamar asserts that LS&R violated the OCSPA, Ohio Rev. Code § 1345.02 and/or § 1345.03.  Ms. Lamar relies on the decision of this Court in *Becker v. Montgomery, Lynch*, Case No. 1:02CV874, 2003 U.S. Dist. LEXIS 24992 at *7-8 (N.D. Ohio, Feb. 26, 2003), which states: "Any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03."

Ms. Lamar offers no evidence in support of her claim that LS&R violated the OCSPA, other than the allegation that LS&R violated the FDCPA.  Because there is no FDCPA violation, there is nothing to sustain this claim.  Accordingly, LS&R is entitled to summary judgment on Count V of Ms. Lamar's Third Party Complaint as a matter of law.

Based on the foregoing, LS&R's Motion for Summary Judgment as to Count V (Docket #72) is hereby GRANTED.  Ms. Lamar's Motion for Summary Judgment as to Count V (Docket #66) is hereby DENIED.

**D.      Counts VI, VII and VIII.**

Count VI of Ms. Lamar's Third-Party Complaint alleges assault against Scott Harner.  No motions for summary judgment were filed relative to this claim.

Count VII of Ms. Lamar's Third-Party Complaint alleges intentional infliction of emotional distress against Scott Harner and LS&R.  To the extent that Count VII alleges a claim for intentional infliction of emotional against Mr. Harner, no motions for summary judgment have been filed.

To the extent that her claims under Count VII against LS&R arise under a theory of vicarious liability, there is no evidence before this Court of any relationship between LS&R and Mr. Harner which would warrant a finding that LS&R could be liable for the independent actions of Mr. Harner. As stated above, Mr. Harner worked as an independent process server, hired to serve legal process upon Ms. Lamar.  There is no evidence that LS&R controlled, or had the right to control, the manner in which he conducted his business, nor is there any evidence that LS&R directed Mr. Harner to work in the manner alleged by Ms. Lamar.  Further, to the extent that Ms. Lamar alleges intentional infliction of emotional distress against LS&R independent of Mr. Harner's actions, such a claim fails.  The only action LS&R has taken is to file an action in foreclosure against Ms. Lamar on behalf of its client, FHLMC. Therefore, there is no evidence to support Count VII as against LS&R.

In Count VIII of her Third-Party Complaint, Ms. Lamar seeks to hold LS&R and Cleveland Process Service liable for the actions of Scott Harner.  As stated above, Mr. Harner worked as an independent contractor and, therefore, LS&R cannot be held liable for the alleged tortious conduct of Mr. Harner.  Ms. Lamar's claim against Cleveland Process Service for the alleged unlawful actions of Mr. Harner may be viable.  Cleveland Process Service was Mr. Harner's company and he was the

sole employee.  However, for reasons discussed below, the Court will not discuss this claim further.

Whether or not Ms. Lamar intended to raise a claim against Cleveland Process Service under Count VIII for alleged violations of the FDCPA is unclear.  However, as discussed above, Mr. Harner and CPS are not "debt collectors" as defined by the FDCPA.  Therefore, no liability under the FDCPA can arise for CPS.

Count IX of the Third-Party Complaint alleges that FHLMC, LS&R, Mr. Harner and Cleveland Process Service engaged in a civil conspiracy against Ms. Lamar.  The tort of civil conspiracy is a "malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."  *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475 (1998) (quoting *Kenty v. Transamerica Premium Ins. Co.* 72 Ohio St. 3d 415, 419 (1995).  "An underlying unlawful act is required before a civil conspiracy claim can succeed."  *Id.*  "The malice involved in the tort is 'that state of mind under which a person does a wrongful act purposely, without a reasonable lawful excuse, to the injury of another.'"  *Id.*

No evidence has been presented to support a claim that FHLMC or LS&R engaged in any civil conspiracy against Ms. Lamar.  There is no evidence of a "common design" to cause harm to Lamar.  LS&R and FHLMC are entitled to summary judgment relative to Plaintiff's civil conspiracy claim.

No motion for summary judgment was filed by Ms. Lamar relative to her claim of civil conspiracy.  Mr. Harner and Cleveland Process Service did not file for summary judgment as to the civil conspiracy claim.

Based on the foregoing, LS&R's Motion for Summary Judgment as to Counts VII, VIII and

IX (Docket #72) is hereby GRANTED.  FHLMC's Motion for Summary Judgment as to Count IX (Docket #78) is hereby GRANTED.  To the extent that Count VIII seeks to hold Cleveland Process Service liable under the FDCPA, the Motion for Summary Judgment filed by Scott Harner and Cleveland Process Service is hereby GRANTED.

Counts VI , VII, VIII, and IX, to the extent that said claims raise common law claims against Scott Harner and/or Cleveland Process Service, will not be addressed by this Court.  Claims for assault; intentional infliction of emotional distress; respondeat superior/vicarious liability; and, civil conspiracy, as alleged against Mr. Harner and/or Cleveland Process Service are not necessary to the foreclosure action instituted by FHLMC.  Therefore, the Court will not entertain these claims and they are dismissed from this action.

## CONCLUSION

Based on the foregoing, the Court hereby finds:

1.  Plaintiff FHLMC is entitled to summary judgment as a matter of law on its Complaint in Foreclosure and is entitled to summary judgment as a matter of law as to Ms. Lamar's Counterclaim for civil conspiracy.  Plaintiff FHLMC must comply with all the mandates set forth in General Order 2006-16 for filing a Complaint in Foreclosure.
    Subject to its compliance with all of the mandates set forth in General Order 2006-16, FHLMC's Motion for Summary Judgment (Docket #78) is hereby GRANTED.

2.  Third-Party Defendant LS&R is entitled to summary judgment on all of the claims set forth against it in Ms. Lamar's Third-Party Complaint.
    LS&R's Motion for Summary Judgment (Docket #72) is hereby GRANTED.
    Ms. Lamar's Motions for Summary Judgment against LS&R (Docket #s 66 and 69) are hereby DENIED.

3.  Scott Harner and Cleveland Process Service are entitled to summary judgment on Ms. Lamar's claims under the FDCPA, Count IV of Ms. Lamar's Third-Party Complaint (Docket #64).  Further, CPS cannot be liable under the FDCPA on the basis of respondeat superior/vicarious liability, Count VIII, as both are excluded from the

definition of "debt collector."  To the extent that Cleveland Process Service seeks summary judgment on Ms. Lamar's common law claims under a theory of vicarious liability/respondeat superior for the alleged tortious actions of Mr. Harner, this Court will not rule.

4.      The remaining claims against Scott Harner and Cleveland Process Service, including assault, intentional infliction of emotional distress, and civil conspiracy, as well as any claims arising under a theory of respondeat superior/vicarious liability for any of the claims against Cleveland Process Service, are common law claims which are not necessary to the foreclosure action brought by FHLMC.  Therefore, the Court will not entertain these claims and they are hereby dismissed.

IT IS SO ORDERED.

_s/Donald C. Nugent_____

DONALD C. NUGENT
United States District Judge

DATED:_ August 22, 2006_____